IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

SOUTHERN DIVISION

| | |
|---|---|
| Brian Horsley, *Pro Se*<br>    150 Post Office Road, Unit 818<br>    Waldorf, Maryland, 20604, <br><br>    Plaintiff,<br><br>    v.<br><br>KBP Investments,<br>    8900 Indian Creek Parkway, Suite 100<br>    Overland Park, KS, 66210<br><br>FQSR, LLC, trading as KBP Foods<br>    8900 Indian Creek Parkway, Suite 100<br>.   Overland Park, KS 66210<br><br>Gbenga Olagbaju, KFC, General Manager,<br>    2180 Crain Highway<br>    Waldorf, Maryland, 20601<br><br><u>Serve On</u>:<br><br>Michael Kulp, CEO of KBP Investments<br>    10950 Grandview Drive, Suite 300<br>    Overland Park, KS 66210<br><br>and<br><br><u>Serve On</u>:<br><br>Alan Salts, Member of FQSR, LLC,<br>    8900 Indian Creek Parkway, Suite 100<br>Overland Park, KS 66210<br><br>    Defendants. | Civil Action No.: PX 20 CV 3241<br><br><br><br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

# COMPLAINT AND JURY TRIAL DEMAND

I.     **INTRODUCTION**

This employment discrimination lawsuit arises out of a individual male, person of color, being born with a disability. At time of birth, Plaintiff Horsley was diagnosed by Dr. Heather de Beaufort, his Ophthalmologist of 18 years, who is a specialist in ophthalmology. Oculocutaneous Albinism ("disability", "visual impairment"). Plaintiff's disability affects his eyes, causing light sensitivity, nystagmus and strabismus (uncontrollable crossing and back and forth movement of the eye), skin and hair.  Plaintiff's disability causes light sensitivity to his skin, further causing Plaintiff's struggle to see small objects to include, but, not limited to small print and small residue.  Plaintiff Brian Horsley ("Plaintiff"), born with a visual impairment was fired and denied reasonable accommodations, in the work place, a place of public accommodation.  Defendants violated the Americans with Disabilities Act (ADA) when Plaintiff Brian Horsley being part of a protected Class, qualified for reasonable accommodations, was denied reasonable accommodations within public establishment.  Plaintiff Horsley after 1 year and 8 months of employment, Defendants fired Plaintiff after successfully completing, Defendant's Interactive Process, instead of the Defendants providing reasonable Accommodations to Plaintiff, the Defendants terminated him.

II.     **PARTIES**

1.     Plaintiff, Brian Horsley ("Plaintiff Horsley"), is a resident of Charles County, Maryland, and a former employee of FQSR, LLC d/b/a KBP Foods.

2.     FQSR, LLC, a limited liability company trading and operating as KPB Foods in the State of Maryland, with principal office located at 8900 Indian Creek Parkway, Suite 100, Overland Park, KS, 66210.

3.     KBP Foods is a part of KBP Investments with principal office located at 8900 Indian Creek Parkway, Suite 100, Overland Park, KS, 66210.

4.     KBP Foods is one of the largest owner and operator franchisees of

.

Kentucky Fried Chicken ("KFC") restaurants in the United States and employs more than one thousand employees in Maryland and throughout the United States, maintaining its principal office in Overland Park, Kansas.

5. KBP Foods, is a company duly organized and existing under the laws of the State of Maryland, maintaining a place of business, operating name as Kentucky Fried Chicken, ("KFC Defendant") at 2180 Crain Highway, Waldorf, Maryland, 20601.

6. Gbenga Olagbaju is the KFC General Store Manager located at 2180 Crain Highway, Waldorf, Maryland, 20601.

7. At all times relevant hereto, the Defendant(s) was acting through its agents, servants, chief people officer, and employees, who were acting within the scope of their authority, course of their employment, and under the direct control of the Defendant.

8. At all times material herein, the Defendant is and has been a "person" and "employer" as defined under the ADA, Title VII, and is accordingly subject to the provisions of the said act.

## III.     PRELIMINARY STATEMENT

9. This is an action for an award of damages and other relief filed by Plaintiff, Brian Horsley ("Plaintiff'), a former employee of FQSR, LLC trading as KBP Foods a KBP Investments Company, doing business as Kentucky Fried Chicken, ("KFC") collectively ("Defendants"), who has been harmed by the Defendant's discriminatory employment practices.

10. This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e), et seq., as amended by the Civil Rights Act of 1991, at 42 U.S.C. §1981(a) ("Title VII"), the Americans with Disabilities Act, 42 U.S.C. §12101, et seq. ("ADA").

## IV.     JURISDICTION AND VENUE

11. Subject matter jurisdiction is proper in this Court pursuant to 42 U.S.C. §

12101, 12112 to 12117 et seq. as the case arises under federal law, the ADA, and personal jurisdiction is proper in this Court, because Defendant transacts extensive business in Maryland, and the events giving rise to this litigation took place in Maryland.

12. The supplemental jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1367consider Plaintiffs claims arising under the EEOC.

13. All conditions precedent to the institution of this suit have been fulfilled and Plaintiff has satisfied all jurisdictional prerequisites to the maintenance of this action.

14. On or about August 28, 2020, a Notice of Right to Sue was received by the Equal Employment Opportunity Commission and this action has been filed within ninety (90) days of receipt of said notice.

15. Venue is proper in this Court under 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to the claim occurred in Charles County, Maryland.

V. **STATEMENT OF CLAIM**

16. On or about July 30, 2016, Plaintiff begin his employment orientation at KFC location - 5785 S.W. Crain Highway. Upper Marlboro , MD 20772. Plaintiff discussed with Defendants specifics pertaining to his disability, more specifically his visual impairment and the accommodations needed.

17. Plaintiff advised Carlton "KFC Area Coach" that he could not see small objects, and that he would be better staying on 1 task for a period of time before being introduced a trained on any other task. Plaintiff advised Carlton that he would like to cook chicken and stay on that task.

17. Carlton agreed. He told Plaintiff that he would let him only cook KFC Famous Chicken.

18. Defendants hired Plaintiff. Defendants placed Plaintiff at a KFC location

closet to his home. Plaintiffs address of employment was 2180 Crain Highway, Waldorf,

Maryland, 20601 ("KFC").

19.     Carlton "KFC Area Coach" introduced Plaintiff to his direct Store Manager, Alvin White.

20.     On or about July 30, 2016, Plaintiff was placed on the store schedule. Alvin  begin training Plaintiff on how cook KFC's Famous Chicken.  When other tasks need to be completed like taking out trash, cleaning KFC parking lot, cleaning the fryers, cleaning the restaurant lobby area, including sweeping, moping the floor, cleaning windows or tables, Alvin assigned those tasks to other employees on Plaintiffs shift.

21.     Plaintiff was able to whisper to Alvin and let him know if he needed a break or he needed assistance with carrying chicken bags out of the restaurant freezer.  Alvin always accommodated Plaintiff, which made Plaintiff feel safe and protected in the work place.

22.     After about 5 months of working as an employee and cooking KFC's Famous Chicken, Alvin was pleased with Plaintiffs performance.  Plaintiffs job performance was good and acceptable.  Therefore, Alvin gave Plaintiff a small pay raise.

23. On or about February 1st, 2017, Alvin (" KFC Area Coach") and Carlton ("KFC Store Manager") was no longer employees of KBP Foods.  Before leaving Defendants Carlton and Alvin advised the new managers, more specifically Gbenga Olagbaju ("Mr. G") about Plaintiff's disability so that Defendants would  continue to accommodate Plaintiff..

24.  On or about August 1, 2017, once the new manager, Gbenga Olagbaju, was hired full time, Plaintiff begin experiencing changes in the work place, a public establishment.

25.   Plaintiff accommodations stopped.  Gbenga Olagbaju, begin to give Plaintiff tasks he has never done before.  Gbenga Olabaju would ask Plaintiff to take out the trash, when the previous store manager Alvin would assign those tasks to other employees on his work shift.  Gbenga Olabaju would ask Plaintiff to clean the fryer..  Alvin never assign this task to Plaintiff, that task was assigned to another employee or night manager name Crystal or Dale at closing.

26.     Plaintiff told Gbenga Olagbaju, again that he could not see small objects.

Defendant Gbenga Olagbaju would continuously state, "you can see, you just don't want to do your job". Plaintiff began to experience harassment.
.

27. More specifically on or about January 13, 2018, when Plaintiff was off, Gbenga Olagbaju sent a text message to Plaintiff stating "you costing me money".

28. On or about March 10, 2018, Plaintiff arrived at KFC at his scheduled time, 8:30am. Plaintiff put on his work apron, plastic gloves and black KFC hat, and begin cleaning his station and preparing ("prepping") KFC Famous Chicken for the day.

29. At approximately 10:05am, Gbenga Olagbaju walked in to the work place and immediately told Plaintiff to stop prepping chicken and to go take out trash that was left from the previous night, when Plaintiff was off on that day.

30. There were other employees that was available to take the trash out but instead of asking another employee that was standing around, Gbenga Olagbaju again targeted the Plaintiff. Plaintiff took the trash out.

31. Plaintiff continued to prep the "grilled" chicken. As Plaintiff was completing his task, Gbenga Olagbaju further caused embarrassment to Plaintiff in the work place, Gbenga Olagbaju walked out of his office and yelled at Plaintiff, stating, in front of other employees, " This is not how you are supposed to prepare grilled chicken!," "You don't listen!". Gbenga Olagbaju further stated, "You just do whatever you want to do!". As Gbenga Olagbaju was yelling, Plaintiff, felt sad, embarrassed and humiliated.

32. Plaintiff stated to Gbenga Olagbaju "this is way I was trained to prep the grilled chicken, Mr. G but "ok I'll do it the way you want", please demonstrate to me what you want me to do exactly". As Plaintiff was explaining this, Gbenga Olagbaju proceeded to get in Plaintiff's face and continued to raise his voice louder and louder, in the work place. Gbenga Olagbaju failed to demonstrate to Plaintiff exactly what he was asking Plaintiff to do specifically. Gbenga Olagbaju continued to verbally harass Plaintiff, causing further embarrassment and humiliation to Plaintiff and disrupting the work environment. Gbenga Olagbaju proceeded by saying to Plaintiff, "you know what! Go home and

don't come back!". Gbenga Olagbaju fired Plaintiff Horsley.

33. Plaintiff clocked out then proceeded outside of KFC establishment, stood behind the trash can, from the bright lighting. Plaintiff to call his advocate to pick him up.

Plaintiff continued to stand behind the trash can until his ADVOCATE arrived.

34. On or about March 10, 2018, Plaintiff wrote a letter to Michael Kulp, CEO of KBP Foods to let him know what occurred at his restaurant and requested to be put back on the schedule to work.

35. On or about March 12, 2018, Plaintiff spoke with companies management to start the interactive process.

36. On or about March 12, 2018, Nancy Fox, Chief People Officer with KBP Foods called Plaintiff to begin a interactive process. Nancy Fox emailed Plaintiff a HIPAA form to be filled out by his ophthalmologist, Dr. Heather de Beaufort.

37. On or about, March 14, 2018, Dr. Heather de Beaufort faxed a completed HIPAA Form detailing the Plaintiffs medical exam history and record of his disability with specific accommodations needed and recommended, so that Plaintiff would be put back on KFC work schedule. Defendants confirmed that the completed HIPAA Form and all it's detailed attachments to include Plaintiffs needed and recommended accommodations was received from the Plaintiffs ophthalmologist, Dr. Heather de Beaufort, ("specialist in ophthalmology"). Nancy Fox stated to Plaintiff that, that's all KBP Foods needed, and that she would be in touch with Gbenga Olagbaju ("KFC Store Manager") for Plaintiff to be put back on the work schedule. Plaintiff was excited and happy that he would be put back on the schedule. ***(EXHIBIT 1)***

38. Interestingly, some time had gone past, Plaintiff had not received a call or text from Gbenga Olagbaju, with his work schedule. Plaintiff was eager to get back to work to continue doing what he loved, cooking KFC Chicken and although Defendants did not contact him, Plaintiff wanted to get back on the work schedule. Plaintiff complied with everything requested.

39. On or about, March 29, 2018, Plaintiff went to his second ophthalmologist

to have them fax to Nancy Fox more information pertaining to his disability.

40. Nancy Fox called Plaintiffs second doctor and asked why did they fax those medical documents to her.

41. On or about March 29, 2018, after receiving information from Plaintiffs

second doctor and Plaintiff complying and completely Defendants Interacrive Process, Nancy Fox sent Plaintiff a termination letter by email. *(EXHIBIT 2)*

42. Defendants failed to provide further reasonable accommodations to Plaintiff. Plaintiff was receiving reasonable accommodations with the prior managers. The Work Environment and accommodations that Plaintiff Horsley was receiving did not change until Defendant Gbenga Olagbaju was hired by KFC as the new full time manager. Plaintiffs prior accommodations did not cause undue hardship to the KFC public establishment.

43. On or about, March 30, 2018, Plaintiff applied for unemployment Compensation thru the State of Maryland Department of Labor and Licensing ("DLLR"). On or about April 5th 2018, Plaintiff began receiving unemployment compensation.

44. In retaliation, Defendants appealed the decision in effort to have Plaintiffs unemployment benefits stopped. On or about June 4, 2018, Defendant Gbenga Olagbaju and Plaintiff attended a hearing by phone.

45. Interestingly, Defendant Gbenga Olagbaju presented four (4) alleged write up's for May 22. 2017, November 17, 2017, January 13, 2018 and March 8, 2018 ; (A) 11/17/2017, contained 2 different dates on the signature line ; (B) 1/13/2018, Plaintiff did not work on this day ; (C) 3/08/2018, fail to contain Plaintiffs signature and date ; 5/20/2017, the signature contained in this alleged write up is not that of the Plaintiff and the date is signed 3/22/2017. Defendants further alleged on February 17, 2018, Horsley left a pan of prepared chicken underneath a pan of waste with blood and liquid. This chicken, therefore, had to be deemed waste". Defendants failed to provide a write up to support this allegation. The conduct of Defendants was malicious, willful and intentional.

46. To further retaliate against Plaintiff Horsley, Defendant Gbenga Olagbaju

knowingly, willfully and maliciously submitted false and altered documents to mislead the decision of the State of Maryland DLLR Unemployment Compensation in its favor.

47. On or about June 11, 2018, Maryland Department of Labor and Licensing ("DLLR") for Unemployment Compensation found that Plaintiff was terminated but not for gross misconduct or misconduct connected with the work. Md. Code Ann., Labor & Emp.

Article, Section 8-1003 provides for a disqualification from benefits where the claimant is discharged or suspended as a disciplinary measure for misconduct connected with the work.

48. On or about November 7, 2018, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"). On or about February 15, 2019, Defendants filed a Position Statement with EEOC.

49. Defendants Position Statement states that poor performance and insubordination was the underlying reason for termination. Defendant termination had nothing whatsoever to do with his visual acuity.

50. Although Defendants EEOC position statement, further states, "The employee health condition form from Horsley's physicians, Dr. de Beaufort, was received on March 14, 2018, *Defendants* submitted a blank HIPPA Form to EEOC. Defendants further stated, "This information stated that Horsley was not legally blind as Horsley indicated, did not have restrictions, and did not specifically address whether or not Horsley could perform the essential functions of his job, with or without reasonable accommodation". Defendants further intentionally left out Exhibit 9 as a attachment to their position statement.

51. On or about July 30, 2016, Plaintiff was hired at KFC and was an employee for approximately 1 year and 8 months. Plaintiff was receiving accommodations.

52. Defendants received information with particularity, restrictions and reasonable accommodations to accommodate Plaintiff Horsley's Doctor Heather further states, " …….He is a very kind young man, and he does enjoy his job very much. I hope that your organization is able to find a way for him to continue to work safely and productively."

53. Defendants EEOC position statement did not prove gross misconduct or

misconduct. Although, Defendants stated Plaintiff was insubordinate and that his cleanliness was deficient. Interestingly, Defendant Gbenga Olagbaju admitted to DLLR on June 4, 2018 that he had no knowledge of Plaintiff's vision Impairment. Defendant Gbenga Olagbaju used his authority to further abuse, harass, humiliate and cause emotional damage to Plaintiff. Gbenga Olagbaju held Brian's work standards to the same standards of the other employees without any regards for his disability. Defendants failed to ask Plaintiff what accommodations

he needed to continue his employment with KFC. Accommodations was provided to Plaintiff until Gbenga Olagbaju was hired.

## VI.   EXHAUSTION OF FEDERAL ADMINISTRATIVE REMEDIES

54.   On or about November 7, 2018, Plaintiff filed a timely charge with the Equal Employment Opportunity Commission regarding Defendant's discriminatory conduct on dates specified above and more specifically on March 10, 2018.  **_(EXHIBIT 3)_**

55.   On or about August 5, 2018 The Equal Employment Opportunity Commission issued a Notice of Right to Sue letter, which I received on August 28, 2020.  **_(EXHIBIT 4)_**

## VII.   VIOLATIONS

### COUNT I
### (TITLE I - ADA – DISABILITY DISCRIMINATION/FAILURE TO ACCOMMODATE)
### Plaintiff Horsley v. Defendant

56.   Plaintiff Horsley incorporates by reference paragraphs 16 through 53 of his Complaint as though fully set forth herein.

57.    The actions of the Defendant, through its agents, servants and employees, chief

people officers in discriminating against Plaintiff Horsley on the basis of his actual and/or perceived disabilities and/or record of impairment, and failing to provide reasonable accommodation for his disability, constituted violations of the ADA.

58. As a direct result of the aforesaid unlawful discriminatory employment practices engaged in by the Defendant in violation of the ADA, Plaintiff Horsley sustained permanent and irreparable harm, resulting in his termination from employment, which caused him to sustain a loss of earnings, plus loss of future earning power, plus back pay, and front pay and interest due thereon.

59. As a further direct result of the aforesaid unlawful discriminatory employment practices engaged in by the Defendant in violation of the ADA, Plaintiff Horsley suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

## COUNT II
## (TITLE II - ADA – HARRASSMENT IN THE WORK PLACE, A PLACE OF PUBLIC ACCOMMODATION / PROHIBITS DISCRIMINATION BASED ON DISABILITY)
### Plaintiff Horsley v. Defendants

60. Plaintiff Horsley incorporates by reference paragraphs 16 through 53 his Complaint as though fully set forth herein.

61. The actions of the Defendant, through its agents, servants and employees, in retaliating against Plaintiff Horsley for requesting a reasonable accommodation, and for opposing unlawful disability discrimination in the workplace, constituted a violation of the ADA.

62. As a direct result of the aforesaid unlawful retaliatory employment practices engaged in by the Defendant in violation of the ADA, Plaintiff Horsley sustained

permanent and irreparable harm resulting in the termination of his employment, which caused him to sustain a loss of earnings, plus loss of
future earning power, plus back pay, front pay, and interest due thereon.

63. As a further direct result of the aforesaid unlawful retaliatory employment practices engaged in by the Defendant in violation of the ADA, Plaintiff Horsley suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

## COUNT III
### (TITLE IV - ADA – DISABILITY DISCRIMINATION/FAILURE TO ACCOMMODATE / PROHIBITS DISCRIMINATION BASED ON DISABILITY)
### Plaintiff Horsley v. Defendant

64. Plaintiff Horsley incorporates by reference paragraphs 16 through 53 of his Complaint as though fully set forth herein.

65. The actions of the Defendant, through its agents, servants and employees, chief people officers in discriminating against Plaintiff Horsley on the basis of his actual and/or perceived disabilities and/or record of impairment, and failing to provide reasonable accommodation for his disability, constituted violations of the ADA.

66. As a direct result of the aforesaid unlawful discriminatory employment practices engaged in by the Defendant in violation of the ADA, Plaintiff Horsley sustained permanent and irreparable harm, resulting in his termination from employment, which caused him to sustain a loss of earnings, plus loss of
future earning power, plus back pay, and front pay and interest due thereon.

67. As a further direct result of the aforesaid unlawful discriminatory employment practices engaged in by the Defendant in violation of the ADA, Plaintiff Horsley

suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

## COUNT IV
### (TITLE V - ADA – DISABILITY DISCRIMINATION/FAILURE TO ACCOMMODATE / PROHIBITS DISCRIMINATION BASED ON DISABILITY)
### Plaintiff Horsley v. Defendant

68. Plaintiff Horsley incorporates by reference paragraphs 16 through 53 of his Complaint as though fully set forth herein.

69. The actions of the Defendant, through its agents, servants and employees, chief people officers in discriminating against Plaintiff Horsley on the basis of his actual and/or perceived disabilities and/or record of impairment, and failing to provide reasonable accommodation for his disability, constituted violations of the ADA.

70. As a direct result of the aforesaid unlawful discriminatory employment practices engaged in by the Defendant in violation of the ADA, Plaintiff Horsley sustained permanent and irreparable harm, resulting in his termination from employment, which caused him to sustain a loss of earnings, plus loss of future earning power, plus back pay, and front pay and interest due thereon.

71. As a further direct result of the aforesaid unlawful discriminatory employment practices engaged in by the Defendant in violation of the ADA, Plaintiff Horsley suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

## COUNT V
### (TITLE 20 - ANNOTATED CODE OF MARLYAND – PROHIBITS DISCRIMINATION BASED ON DISABILITY)
### Plaintiff Horsley v. Defendant

72. Plaintiff Horsley incorporates by reference paragraphs 16 through 53 of his Complaint as though fully set forth herein.

73. The actions of the Defendant, through its agents, servants and employees, chief people officers in discriminating against Plaintiff Horsley on the basis of his actual and/or perceived disabilities and/or record of impairment, and failing to provide reasonable accommodation for his disability, constituted violations of the ADA.

74. As a direct result of the aforesaid unlawful discriminatory employment practices engaged in by the Defendant in violation of the ADA, Plaintiff Horsley sustained permanent and irreparable harm, resulting in his termination from employment, which

caused him to sustain a loss of earnings, plus loss of
future earning power, plus back pay, and front pay and interest due thereon.

75. As a further direct result of the aforesaid unlawful discriminatory employment practices engaged in by the Defendant in violation of the ADA, Plaintiff Horsley suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

## PRAYER FOR RELIEF

76. Plaintiff Horsley incorporates by reference paragraphs 16 through 53 of his Complaint as though fully set forth at length herein.

WHEREFORE, Plaintiff Horsley demands monetary damages against all Defendants individually, jointly and severely in an amount to be determined at trial, but, award the amount sought of $ 500,000.00 (Five Hundred Thousand Dollars). Plaintiff Horsley further requests that this Court enter judgment in his favor and, and order that:

A. Defendant compensate Plaintiff Horsley with a rate of pay and other benefits and emoluments of employment to which he would have been entitled had he not been

subjected to unlawful discrimination ;

    B.   Defendant compensate Plaintiff Horsley costs and expenses in this litigation, including expert witness fees ;

    C.   Defendant to compensate Plaintiff Horsley, including but not limited to punitive damages, compensatory damages for future pecuniary losses, pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses as allowable;

    D.   The Court award such other relief as is deemed just and proper.

## JURY TRIAL DEMAND

Plaintiff demands trial by jury.

DATE:   November 6, 2020

Respectfully submitted,

*[signature: Brian H]*

Brian Horsley, *Pro Se*

150 Post Office Road, Unit 818

Waldorf, Maryland, 20604

(202) 758-7521

**BrianHorsley10@gmail.com**

**PLAINTIFF**

**Certification and Closing**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

For Parties Without an Attorney
I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:        _November 6_____, 20_20_

Signature of Plaintiff  _Brian H_____

Printed Name Plaintiff  _Brian Horsley_____

                          150 Post Office Road, Unit 818

                          Waldorf, Maryland, 20604

                          (202) 758-7521

                          BrianHorsley10@gmail.com